# Illinois Official Reports

## Appellate Court

***People v. Gomez*, 2017 IL App (1st) 142950**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. NOE GOMEZ, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-14-2950 |
| Filed | March 23, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CR-13852; the Hon. Rosemary Grant Higgins, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Todd T. McHenry, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Mary L. Boland, and Maha Gardner, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE ELLIS delivered the judgment of the court, with opinion.<br>Justices Howse and Burke concurred in the judgment and opinion. |

**OPINION**

¶ 1        Defendant Noe Gomez was found guilty of one count of failing to register as a sex offender under section 3(a)(1) of the Sex Offender Registration Act (Act) (730 ILCS 150/3(a)(1) (West 2012)). Under section 3(a)(1), a sex offender has a duty to register with the police in any municipality where he "resides or is temporarily domiciled for a period of time of 3 or more days." *Id.*

¶ 2        In this appeal, defendant argues that the State failed to prove that he resided or was temporarily domiciled in Chicago, as the State alleged in the indictment. We agree. The State was required to prove two things—(1) that defendant permanently resided or was temporarily domiciled in Chicago, and (2) that defendant failed to register in Chicago. The State failed to prove the first element. The State presented no evidence regarding defendant's current address and no evidence proving that defendant had resided anywhere in Chicago for at least three days in the relevant calendar year. At most, the State presented evidence that defendant previously tried to register at an address in Chicago, that he was later in police custody in Chicago, and that a Chicago police officer could not find any record of defendant being registered in any jurisdiction, Chicago or otherwise. Whatever might be said about defendant's failure to register, and regardless of whether he may have violated other provisions of state law, the State presented no evidence that he violated section 3(a)(1). We reverse defendant's conviction.

¶ 3                                          I. BACKGROUND

¶ 4        The State charged defendant with one count of failing to register as a sex offender under section 3(a)(1) of the Act, alleging that defendant "knowingly failed to register, in person, as a sex offender with the Chicago police department within 3 days of establishing a residence or temporary domicile in the city of Chicago."

¶ 5        At defendant's bench trial, Detective Lunsford of the Chicago police testified that, on June 26, 2013, he met with defendant at the 18th District police station, where defendant was in custody on "an unrelated matter." Lunsford learned defendant's sex offender registration number and, using the number, searched for a "hard card," a card issued to a sex offender once he or she had completed his registration with the Chicago police. Lunsford said that he found "no hard card on file" for defendant. Lunsford testified that a sex offender could obtain a hard card "at any municipality or jurisdiction where [he] reside[d]." Lunsford testified that he looked "to see if there were hard cards in any other jurisdiction[s] that were on file" for defendant and did not find any.

¶ 6        Lunsford also testified that he received a copy of defendant's sex offender registration form from the prison where he had been housed. According to Lunsford, defendant was supposed to have registered on or before July 16, 2012, three days following his release from prison.

¶ 7        Lunsford testified that defendant told him "that he attempted to register at the Chicago Police Department but he was not allowed to because the address he was attempting to register at was not a valid address." Lunsford testified that defendant told him that he had attempted to register at "5435 South Spalding" but could not because "it was too close to a school."

¶ 8        On cross-examination, Lunsford testified that he checked jurisdictions within Illinois and that defendant "was not registered in any other state" according to "the Department of Justice online database."

¶ 9        The parties stipulated that Victor Olf, a correctional officer at Robinson Correctional Center, met with defendant on July 13, 2012, the day defendant was being released from prison, and gave defendant a copy of a sex offender registration notification form. Defendant read the form, and Olf told him that he would "need to establish his residence within the jurisdiction which he decided to reside [in] within three days of his release [from prison], that being July 16, 2012."

¶ 10       The State entered two certified copies of defendant's 1993 conviction for aggravated criminal sexual abuse and 2010 conviction for failing to report as a sex offender.

¶ 11       The court found defendant guilty, stating that the State had proved that defendant "knowingly failed to register in person as a sex offender with the city of Chicago within three days of establishing a residence or temporary domicile in the city of Chicago." The court sentenced defendant to three years' incarceration. Defendant filed this appeal.

¶ 12                                        II. ANALYSIS

¶ 13       On appeal, defendant raises two challenges to his conviction. First, he claims that the State could not prove him guilty of failing to register beyond a reasonable doubt because it failed to establish that he resided or was temporarily domiciled in Chicago. Second, he claims that the Act violates the *ex post facto* clauses of the United States and Illinois constitutions because it constitutes a form of punishment applied retroactively to defendant for his 1993 conviction. See U.S. Const., art. I, § 9, cl. 3; Ill. Const. 1970, art. I, § 16. We do not reach defendant's constitutional claim because we agree that the State failed to prove him guilty of failing to register under section 3(a)(1) of the Act.

¶ 14       When evaluating the sufficiency of the evidence supporting a conviction, we determine whether, when viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the offense to have been proven beyond a reasonable doubt. *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007). We give "great weight" to the trier of fact's determination of the credibility of witnesses and will only reverse a conviction where the evidence is so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt as to defendant's guilt. *Id.* at 115.

¶ 15       As we noted above, section 3(a)(1) of the Act requires a sex offender to register in person:

          "with the chief of police in the municipality in which he or she *resides or is temporarily domiciled* for a period of time of 3 or more days, unless the municipality is the City of Chicago, in which case he or she shall register at the Chicago Police Department Headquarters." (Emphasis added.) 730 ILCS 150/3(a)(1) (West 2012).

The Act defines "place of residence or temporary domicile *** as any and all places where the sex offender resides for an aggregate period of time of 3 or more days during any calendar year." 730 ILCS 150/3(a) (West 2012). "Inherent in each definition is the idea of a specific location." *People v. Robinson*, 2013 IL App (2d) 120087, ¶ 23.

¶ 16       In order to prove a violation of section 3(a)(1) in this case, then, the State was required to prove both (1) that the defendant resided or was temporarily domiciled at a specific location within Chicago, and (2) that the defendant failed to register there.

¶ 17     For example, in *People v. Evans*, 365 Ill. App. 3d 374, 376 (2006), the court held that the State had presented sufficient evidence that the defendant resided at his girlfriend's apartment in Dixon, Illinois, to support a conviction under section 3(a)(1). In *Evans*, the manager for the apartment building testified that the defendant moved into the building on October 26, 2003, and that he saw the defendant in the building "every evening." *Id.* Moreover, several Dixon police officers testified that they pulled over defendant between October and November 2003. *Id.* at 376-77. The citations issued to the defendant during those traffic stops listed his girlfriend's apartment as his address. *Id.* And in December 2003, the defendant registered as a sex offender with the Dixon police department, listing his girlfriend's apartment as his address. *Id.* at 377. From this evidence, the court concluded that "a rational trier of fact could conclude beyond a reasonable doubt that, following his release from jail on October 26, 2003, defendant resided at [his girlfriend's apartment] in Dixon for an aggregate period of 10 or more days, and that he failed to register with the Dixon police department within 10 days of establishing his residence there." *Id.*[1]

¶ 18     By contrast, *Robinson*, 2013 IL App (2d) 120087, ¶ 1, concerned a similar but independent provision of the Act; the defendant was charged with failing to report a change of address under section 6 of the Act (730 ILCS 150/6 (West 2008)). One of the elements the State had to prove to establish that charge was that the defendant had "established a new 'fixed residence' or 'temporary domicile.'" *Robinson*, 2013 IL App (2d) 120087, ¶ 14. The evidence showed that the defendant had registered his address as his grandfather's house in Aurora. *Id.* ¶¶ 3-5. In November 2009, the police went to the house to verify the defendant's address, and the defendant's grandfather told the police that the defendant had not lived with him since August 2009 and that the defendant was working near Davenport, Iowa. *Id.* ¶ 5. After hearing that the police had met with his grandfather, the defendant called the police and told them "that he sometimes left the area for two or three days and was on his way back to Illinois." *Id.* ¶ 7. The defendant's sister testified that the defendant lived with their grandfather. *Id.* ¶ 8.

¶ 19     On appeal, the defendant argued that the State failed to prove him guilty of violating section 6 because it "failed to prove that any other location [the defendant] visited constituted a 'fixed residence.'" *Id.* ¶ 17. The court agreed, noting that the definitions of "fixed residence" and "temporary domicile" connoted "the idea of a specific location" (*id.* ¶ 23) and that the State's evidence merely proved the defendant's absence from his grandfather's house, not "the defendant's *presence* at an unregistered address." (Emphasis in original.) *Id.* ¶ 21. The court noted that the State was required "to prove a specific location [at which the] defendant was required to register." *Id.* But the State failed to present "evidence of any specific address at which defendant stayed for an aggregate period of five days or more, let alone any specific amount of time he stayed at various locations." *Id.* The lack of "any solid evidence of [the] defendant's whereabouts when he was away" from his grandfather's house gave rise to a reasonable doubt as to the defendant's guilt. *Id.* ¶ 22.

¶ 20     The evidence in this case is a far cry from the evidence presented in *Evans* and is much more in line with the lack of proof in *Robinson*. Here, the State was required to prove that defendant resided in Chicago for at least three days without registering with the Chicago

---

[1]At the time *Evans* was decided, section 3(a)(1) of the Act gave sex offenders 10 days to register, before the General Assembly, in its wisdom, decided that 10 days was far too long and eventually cut it down to 3 days. See *Evans*, 365 Ill. App. 3d at 376 (citing 730 ILCS 150/3(a)(1) (West 2002)).

police. While defendant's presence at the Chicago police station could lead to the logical inference that defendant was *present* in Chicago when he was arrested, it does not prove that defendant *resided* in Chicago on that date, nor could it possibly prove that he had resided in Chicago both on that day and at least two other days in that calendar year, to reach the necessary three-day, temporary-domicile element under the statute. Without any evidence placing defendant's residence in Chicago for at least three days, the State failed to prove that defendant permanently resided, or was temporarily domiciled, in Chicago. As such, the State failed to prove that defendant was required to register in Chicago.

¶ 21   The State claims that defendant's residence or temporary domicile in Chicago could be inferred from the evidence that defendant did not register as a sex offender within three days following his release from prison on July 13, 2012, that defendant said that he had previously tried to register at an address in Chicago, and that Detective Lunsford testified that he did not find any record of defendant having registered in Chicago or another jurisdiction. We reject the State's claim that these three pieces of evidence could lead to a reasonable inference that defendant had been in Chicago for at least three days before his arrest.

¶ 22   While the law does require defendant to register within three days of his release from prison, and the evidence showed that defendant never registered anywhere, defendant was not charged with failing to register within three days of his prison release or with failing to comply with annual registration (or even with failing to register weekly if homeless). See 730 ILCS 150/3(a), (b), 6 (West 2012) (requiring homeless sex offender to report weekly, sex offender to register with police within three days of establishing residence in municipality, and sex offender to report annually with police department he last registered with). He was charged with failing to register *in Chicago*. True, it is well within the realm of possibility that defendant moved to Chicago for three days or longer after he was released from prison, but it is just as possible that he did not. The record contains no evidence one way or the other.

¶ 23   And the fact that defendant, at one point, attempted to register at an address located within Chicago tells us nothing about his length of stay at that address. We do not know if defendant resided at that address for one or more days before he attempted to register, or how long he remained at that address after being denied registration, if at all.

¶ 24   Simply put, we have a length of time that defendant did not register—the entire time he has been out of prison—but we have no "specific location" (*Robinson*, 2013 IL App (2d) 120087, ¶ 23) of his residence sufficient to show that defendant was required to register in Chicago, as opposed to any other jurisdiction. And in the one instance in which a specific location was provided—when defendant attempted to unsuccessfully register at a Chicago address—we do not have a length of time to attach to that stay. Reasonable inferences are one thing, but we will not fill in the gaps in the State's evidence with conjecture. See *People v. Jones*, 174 Ill. 2d 427, 430 (1996) (element could not be proved beyond reasonable doubt based on "guess, speculation, or conjecture").

¶ 25   The evidence, in the light most favorable to the State, showed that defendant tried to register at a Chicago address at some point between July 2012 and June 2013, and that he was in Chicago on the day of his arrest. No reasonable inferences can be drawn to establish defendant's residence or temporary domicile in the city of Chicago for three days. Consequently, the State failed to prove that defendant failed to register under section 3(a)(1).

¶ 26   The State claims that, under section 3(a)(1), it was "not required to prove exactly where defendant was staying or residing" to establish his guilt. In other words, the State claims that,

- 5 -

because there was no record that defendant had registered in *any* jurisdiction, and he had to live *somewhere*, the State must have proved him guilty of failing to register.

¶ 27        At the outset, the State cites no authority for this proposition, thereby forfeiting it. See Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016); *Vine Street Clinic v. HealthLink, Inc.*, 222 Ill. 2d 276, 301 (2006) (failure to cite authority results in forfeiture of argument).

¶ 28        Forfeiture aside, we reject the State's position that it did not need to prove defendant's specific residence or temporary domicile. Section 3(a)(1) requires the State to prove that the defendant failed to register with the police in the municipality where he resided or was temporarily domiciled. 730 ILCS 150/3(a)(1) (West 2012). Those terms are specifically defined in the law as any place where the defendant stays for at least three days. 730 ILCS 150/3(a) (West 2012). We agree with *Robinson* that a specific location is contemplated by the statute. We can think of no other reasonable way to read it.

¶ 29        The State would have us simply assume defendant's residence in some unspecified municipality by the mere fact that defendant did not register anywhere. But that reading throws out the residence element entirely by allowing the State to prove a defendant's residence with evidence of a failure to register. It would eliminate one of the two statutory elements from the burden of proof. We decline to read the phrase "resides or is temporarily domiciled" as superfluous. See *In re Detention of Lieberman*, 201 Ill. 2d 300, 308 (2002) (if possible, court must give effect to "[e]ach word, clause and sentence of the statute" and not render words superfluous).

¶ 30        Moreover, the State's reading of the text is undermined by the fact that the defendant's residence or domicile determines the police department with which he must register. If the State did not have to prove the municipality in which a sex offender resided or was domiciled, there would be no way to determine if the defendant had any duty to register with the police department in question. All the State would have to show is that the police could not uncover a record of a defendant's registration anywhere, leaving that defendant vulnerable to prosecution in any jurisdiction. Because a defendant's duty to register is inextricably intertwined with the municipality where he resides or is temporarily domiciled, we conclude that proof of a defendant's place of residence or temporary domicile is an essential element of the offense of failing to register under section 3(a)(1).

¶ 31        The State failed to prove that defendant resided or was temporarily domiciled in Chicago. Thus, we reverse his conviction under section 3(a)(1). In light of our conclusion, we need not address defendant's argument that the Act is an unconstitutional *ex post facto* law.

¶ 32                                    III. CONCLUSION

¶ 33        For the reasons stated, we reverse defendant's conviction.

¶ 34        Reversed.